UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BOARD OF EDUCATION OF JOLIET TOWNSHIP HIGH SCHOOL, DISTRICT 204, et. al.,

Plaintiffs,

v.

PUBLICIS HEALTH, LLC, PRACTICE FUSION, INC., VERADIGM, INC., and ZS ASSOCIATES,

Defendants.

No. 24 CV 11435

Judge Manish S. Shah

**MEMORANDUM OPINION AND ORDER**

Some school districts incurred the costs of educating children born with disabilities resulting from maternal opioid use. They accuse defendants, marketing and consulting companies who assisted drug manufacturers in increasing opioid sales, of racketeering. Defendants move to dismiss for lack of subject-matter jurisdiction and failure to state a claim. Profiting from the opioid epidemic warrants, in appropriate cases, accountability. But the connection between the school districts and these defendants is too attenuated for a racketeering claim. Without a federal claim to ground this court's jurisdiction, or compelling reasons to retain supplemental jurisdiction, the companion state-law claims are also dismissed.

## I. Legal Standards

To survive a motion to dismiss, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). When analyzing the sufficiency of a complaint, I construe it in the light most

favorable to the plaintiffs, accepting all well-pleaded facts as true and drawing all inferences in their favor. *Ratfield v. U.S. Drug Testing Lab'y, Inc.*, 140 F.4th 849, 852 (7th Cir. 2025).

Rule 8(a) "does not demand detailed factual allegations, but it does require more than mere 'labels and conclusions,' or a 'formulaic recitation of the elements of a cause of action.'" *Wertymer v. Walmart, Inc.*, 142 F.4th 491, 494–95 (7th Cir. 2025) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Beyond the requirements of 8(a), because the school districts ground their racketeering claim in allegations of mail and wire fraud, they "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *Ratfield*, 140 F.4th at 852 ("Moreover, because Plaintiffs' civil RICO claims sound in fraud, the circumstances must be described 'with particularity' to satisfy Rule 9(b)'s heightened pleading requirement.").

## II. Background

Because plaintiff school districts allege that the defendants here conspired with McKinsey & Co. to enlarge the opioid market, many of the allegations in this complaint mirror or resemble those made by the school districts in the McKinsey opiate litigation. *Compare* Master Complaint (School Districts), *In re: McKinsey & Co., Inc. National Prescription Opiate Consultant Litigation*, 3:21-md-02996-CRB

(N.D. Cal. Dec. 6, 2021), Dkt. No. 297 *with* [8].[1] For the purposes of brevity, I incorporate by reference Judge Breyer's discussion of the opioid epidemic, neonatal abstinence syndrome (also known as neonatal opioid withdrawal syndrome), and the pharmaceutical-consultant enterprise from *In re McKinsey & Co., Inc. Natl. Prescription Opiate Litig.*, 3:21-md-02996-CRB, 2024 WL 2261926 (N.D. Cal. May 16, 2024). While the complaint contains extensive allegations pertaining to the defendants' conduct, the relevant facts for the disposition of this case all pertain to the plaintiffs and their theory of harm.

Defendants' marketing practices sought to increase profits from opioids by changing prescriber habits and public perception regarding the safety and efficacy of opioids. [8] ¶ VIII.52.[2] To achieve that goal, defendants targeted different segments of prescribers with marketing strategies focused on increasing dosage instead of discontinuing treatment when the patient became tolerant. [8] ¶¶ VIII.64–VIII.67. The marketing strategy successfully led to more patients and higher dosages. [8] ¶ VIII.68.

Higher dosages for longer periods of time led to more cases of addiction. [8] ¶ VIII.67. More cases of addiction led to more people using opioids during

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. The facts are taken from the unsealed complaint, [8]. Plaintiffs filed an unredacted version of the complaint under seal, but the redactions are immaterial to resolving this motion, so all citations are to the public filing.

[2] The paragraph numbering in the complaint starts over at the beginning of Part VIII, on page 168. To distinguish between the two sets of numbering, the prefix "VIII." will be appended to paragraph numbers from page 168 onwards.

pregnancy. [8] ¶ 27. More opioid use during pregnancy led to more infants born with neonatal opioid withdrawal syndrome. [8] ¶ 27. Children born with neonatal opioid withdrawal syndrome are substantially more likely to be diagnosed with educational disabilities. [8] ¶ 540. Once those children reach school age, the responsibility of providing federally mandated special education services falls to schools. [8] ¶ 27.

As a result, plaintiffs incurred costs for hazardous waste abatement, medical care to students suffering from opioid-related illnesses, first-responder training, opioid overdose treatment medications, mental health services for victims of the opioid epidemic and their families, and care for children whose parents suffer from opioid-related disability. [8] ¶ VIII.146. To recover for those injuries, plaintiffs now sue defendants Publicis Health, ZS Associates, Practice Fusion, and Veradigm under six causes of action: federal RICO, negligence, gross negligence, public nuisance, civil conspiracy, and civil aiding and abetting. [8] ¶¶ VIII.1–VIII.184; VIII.551–VIII.555.

## III. Analysis

### A. Improper Parties

Two parts of this case need to be dismissed before reaching the merits of any claim. First, two states have released all claims held by their subdivisions against Publicis Health. As plaintiffs concede, all claims held by New York subdivisions against entities released in a statewide opioid settlement are barred by New York statute. [49] at 34; N.Y. Mental Hyg. L. § 25.18. Plaintiffs contend that a corresponding Illinois statute does not have the same effect, but their reading is mistaken. *See* 735 ILCS 5/13-226 (“On and after [July 9, 2021], no unit of local government or school district may file or become a party to opioid litigation against

an opioid defendant that is subject to a national multistate opioid settlement unless approved by the Attorney General."). Publicis Health—but not the other defendants—has agreed to a multistate settlement of its claims, [35-21] (Illinois Final Judgment and Consent Decree), [35-29] (New York Consent Order and Judgment), so the Illinois and New York subdivisions' claims against Publicis Health are barred.

Second, although plaintiffs name Veradigm as a defendant in this case, they have failed to assert any substantive allegations against it. *See* [8]. In their consolidated response to defendants' motions to dismiss, as well as their sur-reply, plaintiffs did not mention Veradigm other than in the case caption. *See* [49], [53-1]. Plaintiffs have therefore forfeited any arguments against dismissing Veradigm. *Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 825 (7th Cir. 2015) ("a party generally forfeits an argument or issue not raised in response to a motion to dismiss").

Plaintiffs must, at a minimum, allege either independent wrongful conduct, or that Veradigm pierced the corporate veil between its subsidiary and itself. *Cf. Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 378 (7th Cir. 2008) (Applying Illinois and Delaware law to hold that "a corporation is presumed to be separate and distinct from its officers, shareholders, and directors, and those parties will not be held personally liable for the corporation's debts and obligations") (citation omitted). Because the complaint fails to allege any facts implicating Veradigm beyond its indirect ownership of Practice Fusion, Veradigm cannot be subject to liability for Practice Fusion's alleged conduct.

### B. Racketeer Influenced and Corrupt Organizations Act Claims

The lone federal claim asserted in the complaint is under 18 U.S.C. § 1964(c) of the Racketeer Influenced and Corrupt Organizations Act. [8] ¶¶ VIII.1–VIII.153. The Act provides a civil remedy for anyone injured in their business or property by reason of a violation of § 1962. Plaintiffs allege that defendants, through their work promoting the sales of opioids, violated § 1962(c)–(d), which make it unlawful for any person associated with any enterprise engaged in interstate or foreign commerce, to participate or conspire to participate in the conduct of such enterprise's affairs through a pattern of racketeering activity.

The civil racketeering statute does not allow everyone injured by acts of racketeering to sue. Congress has imposed additional limitations on which parties may seek relief for racketeering violations. *See Fiala v. B & B Enterprises*, 738 F.3d 847, 850 (7th Cir. 2013). It is not enough that the defendant committed racketeering—a civil plaintiff may only bring an action against that defendant for injuries to the plaintiff's "business or property by reason of" the racketeering. 18 U.S.C. § 1964(c). This creates two requirements to be a proper plaintiff for a civil racketeering claim: (1) injury to business or property and (2) direct causation.

#### 1. *Subject-Matter Jurisdiction*

Publicis Health contends that the allegations in the complaint are so frivolous that they do not support subject-matter jurisdiction. Not so. "Dismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is 'so insubstantial, implausible, foreclosed by prior decisions of [the Supreme] Court, or otherwise completely devoid of merit as not to involve a

federal controversy.'" *Steel Co. v. Citizens for a Better Env.*, 523 U.S. 83, 89 (1998) (citing *Oneida Indian Nation of N.Y. v. County of Oneida,* 414 U.S. 661, 666 (1974)). The requirements of § 1964(c) are non-jurisdictional elements of the cause of action and failure to satisfy them warrants dismissal under Rule 12(b)(6), not 12(b)(1). *Ryder v. Hyles*, 27 F.4th 1253, 1256 (7th Cir. 2022).

It is only when a "RICO theory 'is *so* feeble, so transparent an attempt to move a state-law dispute to federal court, that it does not arise under federal law at all.'" *Williams v. Aztar Indiana Gaming Corp.*, 351 F.3d 294, 298 (7th Cir. 2003) (citing *Oak Park Trust & Sav. Bank v. Therkildsen,* 209 F.3d 648, 651 (7th Cir. 2000)) (cleaned up) (emphasis in original). The complaint here—which includes extensive allegations of predicate acts of racketeering, as well as an enterprise—is not "so 'obviously frivolous' that it cannot support" subject-matter jurisdiction. *See Sabrina Roppo v. Travelers Com. Ins. Co.*, 869 F.3d 568, 590 (7th Cir. 2017).

2. *Injury to Business or Property*

At least three circuit courts have said that costs attributed to government services like police or fire protection, healthcare, and recordation of land transactions are not injuries to business or property. *See Town of W. Hartford v. Operation Rescue*, 915 F.2d 92, 104 (2d Cir. 1990); *Canyon Cnty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 976–80 (9th Cir. 2008); *Welborn v. Bank of New York Mellon Corp.*, 557 Fed.Appx. 383, 387 (5th Cir. 2014). District courts addressing this issue in the context of the opioid epidemic are divided. *Contrast City and Cnty. of San Francisco v. Purdue Pharma L.P.*, 491 F.Supp.3d 610 (N.D. Cal. 2020) (applying *Canyon County* to hold "that governmental entities cannot assert a RICO claim based on expenditures or

services provided in their sovereign or quasi-sovereign capacities") *with In re Natl. Prescription Opiate Litig.*, No. 1:17-MD-2804, 2018 WL 6628898 (N.D. Ohio Dec. 19, 2018) ("Plaintiffs may recover damages based on the provision of governmental services in their capacity as a sovereign to the extent they can prove the asserted costs go beyond the ordinary cost of providing those services and are attributable to the alleged injurious conduct of Defendants").

Excluding sovereign or quasi-sovereign interests from "business or property" in RICO relies on the Supreme Court's interpretation of the Clayton Act in *Hawaii v. Standard Oil Co. of California*, 405 U.S. 251, 264–65 (1972) ("business or property" of a state refers to commercial interests in its capacity as a consumer of goods and services, not a state's ability to carry out its functions). *See Canyon Cnty.*, 519 F.3d at 978 ("As used in the Clayton Act's private right of action, then, the phrase 'business or property' excludes states' interests in their sovereign or quasi-sovereign capacities, but does include states' interests as ordinary marketplace actors. We believe that this interpretation of the phrase 'business or property' should apply in the context of a civil RICO claim, as well.").

In the Clayton Act, "business or property" includes injuries to a government's interests as a party to a commercial transaction. *Reiter v. Sonotone Corp.*, 442 U.S. 330, 341–42 (1979). Based on similarities in purpose and structure, the Court has looked to the Clayton Act for guidance when interpreting RICO. *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 152 (1987) (adopting Clayton Act's four-year limitations period for civil RICO claims); *see also Holmes v. Sec. Inv. Prot.*

*Corp.*, 503 U.S. 258, 267 (1992) (Congress modeled § 1964(c) on the civil-action provision of § 4 of the Clayton Act). But "the Clayton Act and § 1964(c) are not 'interchangeable.'" *Med. Marijuana, Inc. v. Horn*, 145 S.Ct. 931, 943 (2025) (citing *RJR Nabisco v. European Community*, 579 U.S. 325, 352 (2016)).

Although "injured" in § 1964(c) is not limited to "RICO-type" injury like the Clayton Act is limited to antitrust injury, *id.* at 942–43, "business or property" refers to the same types of harm in both statutes—at least as it relates to government spending. *Dillon v. Combs*, 895 F.2d 1175, 1177 (7th Cir. 1990) ("business or property" in § 1964(c) does not include sovereign or derivative interests) (citing *Hawaii*, 405 U.S. 251 (1972)). When it comes to government expenditures, "business or property" excludes sovereign and quasi-sovereign interests and is limited to the government's interests as a party to commercial transactions.

The school districts here complain about injury to quasi-sovereign interests in addressing a "range of social problems, including violence and delinquency." [8] ¶¶ VIII.144–VIII.146. These are not harms to the school districts' business or property. The social harms from opioid addiction that the school districts reckoned with are quasi-sovereign harms and not within the scope of RICO. But the school districts also mention hazardous waste on school district property and costs for naloxone, which may invoke the districts' role as parties to commercial transactions. [8] ¶ VIII.146(A), (D). Although the complaint does not allege increased costs beyond the ordinary prices for goods and services, drawing inferences in plaintiffs' favor, a narrow band of harm plausibly affected the school districts' commercial interests.

3. *Direct Relationship*

Whatever injuries the school districts allege need to be "by reason of" the alleged racketeering. There must be "some direct relation between the injury asserted and the injurious conduct alleged." *Holmes v. Securities Inv'r Protec. Corp.*, 503 U.S. 258, 268 (1992). "The key word is 'direct'; foreseeability does not cut it." *Horn*, 145 S.Ct. at 945. (citing *Hemi Group*, 559 U.S. at 12).

Treating, for the sake of argument, the pharmaceutical companies, McKinsey, and defendants in this case as a singular enterprise, there are too many links in the chain between that enterprise and the school districts to sustain direct causation. Between the alleged predicate acts of racketeering and the claimed injury to business or property, there were at least three independent decision makers—medical professional who prescribed the opioids, the pharmacists who dispensed the opioids, and the parents who abused the opioids while pregnant. That cannot suffice as an injury "by reason of" racketeering.

*Sidney Hillman* necessitates that conclusion. There, third-party insurers sued a drug manufacturer under § 1964 for unlawfully promoting off-label uses of one of its products. But "improper representations made to physicians [did] not support a RICO claim by Payors, several levels removed in the causal sequence." *Sidney Hillman*, 873 F.3d 574, 578 (7th Cir. 2017). The causal chain here is longer than the one at issue in *Sidney Hillman* and so is necessarily too attenuated.

Because the absence of causation is a dispositive defect in plaintiffs' complaint, I do not reach the other issues briefed by the parties. And because no change to the pleadings could sufficiently shorten the causal chain for the injuries the school

districts allege to be "by reason of" the § 1962 violations, amendment would be futile. Dismissal with prejudice is appropriate for the racketeering claim. *See Guise v. BWM Mortg., LLC*, 377 F.3d 795, 801 (7th Cir. 2004) (recognizing that "a district court may deny leave to amend on the grounds of undue delay, bad faith, dilatory motive, prejudice, or futility").

### C. State Law Claims

Plaintiffs did not make specific allegations of subject-matter jurisdiction. *See* [8]. The complaint raises issues of federal law under the RICO Act, so the court has original jurisdiction under 28 U.S.C. § 1331. S*ee* [8] ¶¶ VIII.1–VIII.153; *Hart v. Wal-Mart Stores, Inc. Assocs.' Health and Welfare Plan*, 360 F.3d 674, 678 (7th Cir. 2004). As pled, the complaint only gives rise to supplemental jurisdiction over the state-law claims under 28 U.S.C. § 1367. In this circuit, "the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999). The parties have not briefed, and so I do not consider, whether any alternative basis for federal jurisdiction over the remaining state-law claims may exist.[3]

## IV. Conclusion

Defendants Publicis Health's, [34], ZS Associates', [36], Practice Fusion's, [38], and Veradigm's, [38], motions to dismiss for failure to state a claim are granted. All claims brought by the Illinois and New York subdivisions against Publicis Health are

---

[3] Complete diversity is absent from the complaint. The plaintiffs include Illinois, New York, and California school districts. Defendants ZS and Veradigm are allegedly headquartered in Illinois; defendant Publicis Health's principal place of business is in New York; and defendant Practice Fusion's headquarters are in California. [8] ¶¶ 38–50.

dismissed with prejudice. All claims brought against Veradigm are dismissed with prejudice. The federal RICO claim is dismissed with prejudice. The remaining state-law claims are dismissed without prejudice to refiling either in state court or in federal court with allegations sufficient to establish subject-matter jurisdiction. Enter judgment and terminate civil case.

ENTER:

Manish S. Shah
United States District Judge

Date: September 8, 2025